IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**TONY HERRERA**,

    Plaintiff,

vs.                                                  No. **CIV-04-00611 MCA/RHS**

**INTEL CORPORATION,**

    Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Intel's Motion for Summary Judgment* [Doc. 22], filed April 14, 2005. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants Intel's *Motion* in its entirety and dismisses this action with prejudice.

### I. BACKGROUND

Plaintiff Tony Herrera is a former employee of Defendant Intel Corporation. He is Hispanic. [Doc. 1 at 11]. Herrera worked for Intel as a manufacturing technician from April 1993 until November 2003. [Id. at 2; see also Doc. 24, Exh. B]. According to Herrera, he first encountered problems at Intel in January 2002, after he and co-worker John Perez were sent on a six-month detail to an Intel facility in Chandler, Arizona to learn a new computer chip manufacturing process known as "The Copper Process." [Doc. 1 at 3]. Upon his return to Intel's Rio Rancho, New Mexico facility in July 2002, Herrera began to train his peers on The Copper Process. When his peers "expressed reluctance" to the new process, Herrera

informed his supervisor, Steve Dempsey. [Id.]. Herrera alleges that Dempsey then began to demean Herrera's qualifications and, in August 2002, relieved Herrera of his training duties on the ground that Herrera had not completed certain certifications. [Id. at 3-4]. Herrera contends that around this same time he was (1) denied training opportunities; (2) falsely accused of tardiness, abusing vacation time, and not being a "team player"; and (3) reprimanded for reporting that co-worker Mark Stierwalt had improperly changed system codes. [Id. at 5-6; see also Doc. 27 at 10 n.6].

In November 2002, Herrera asserts that he was subjected to the first of two racially derogatory comments when, while working with other Hispanic employees in one of Intel's back bays, co-worker Lars Albrecht remarked that "[y]ou Mexicans are all on the back end and the [w]hite folk are on the front end." [Doc. 1 at 6]. Shortly thereafter, in a December 2002 meeting with Dempsey, Herrera maintains that Dempsey called him a "Spic." Herrera both confronted Dempsey and reported this incident to Human Resources (HR) Program Manager Christine Bowlin, "yet to no avail." [Id. at 8]. In fact, Herrera asserts that Dempsey retaliated against him for contacting Bowlin by (1) issuing Herrera a written warning, (2) transferring him to a position in an isolated building, (3) threatening him with termination, and (4) firing him on May 16, 2003. [Id. at 7-8; see also Doc. 24, Exh. A at 211]. On May 22, 2003, Herrera filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that between August 1, 2002 and May 1, 2003, Intel, through Dempsey, discriminated against him because he is Hispanic and retaliated against him for complaining to Bowlin about Dempsey's use of the term "Spic."

[Doc. 23 at 11-12 and Exh. Q; Doc. 24 at 7]. In an undated letter, the EEOC issued counsel for Herrera a Notice of Right to Sue and, on June 1, 2004, Herrera, through counsel, filed his *Complaint for Damages and Jury Demand* pursuant to Title VII, 42 U.S.C. § 2000e *et seq.* of the Civil Rights Act of 1964, alleging (1) hostile-work-environment employment discrimination, (2) disparate treatment, and (3) retaliation. [See generally Doc. 1; see also Doc. 23, Exh S, Letter from Irene Steely, EEOC Investigator, to Gilbert J. Vigil, Esq. re: Charge # 390-2003-01377].

Intel now moves for summary judgment on several grounds. [Doc.22]. First, Intel asserts that any claims based on events occurring after May 1, 2003 are time-barred for Herrera's failure to exhaust administrative remedies. [Doc. 23 at 15-16]. Intel points to Herrera's EEOC Charge of Discrimination, which describes the alleged discrimination as taking place between August 1, 2002 and May 1, 2003 and does not indicate that the discrimination constituted a continuing action. [See Doc. 24, Exh. Q]. Even if events occurring after May 1, 2003 could be considered, submits Intel, nothing that occurred after May 1, 2003 could be deemed an adverse employment action. Intel disputes Herrera's allegation that he was terminated on May 16, 2003, noting that, after meeting with Dempsey on that date, Herrera was placed on temporary paid suspension for his insubordination during the meeting, and that this suspension was later converted to a paid medical leave of absence. Further, when Herrera, who had been approved to return to work as of November 4, 2003, finally resigned from Intel on November 15, 2003, he did so not because his working environment had become so intolerable that he had no choice but, instead, because he had

3

already begun working on a full-time basis for a company called Z-Coil. [Doc. 23 at 16-18]. As its other bases for summary judgment, Intel argues that Herrera cannot establish a prima facie case of hostile-work-environment employment discrimination, disparate treatment, or retaliation and that, even if he could, he is nevertheless unable to demonstrate that the reasons Intel has articulated for its actions are a pretext for discrimination. [Id. at 15-25].

## II. ANALYSIS

### A. Summary Judgment Standard, Fed.R.Civ.P. 56

Summary judgment under Fed.R.Civ.P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." Fed.R.Civ.P. 56(e). Nor will unsupported conclusory allegations create a genuine issue of fact. Harrison v. Wahatoyas, L.L.C., 253 F.3d 552, 557 (10th Cir. 2001). Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Judgment is appropriate as a matter of law if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

In order to warrant consideration by the Court, the factual materials accompanying

a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial). See Celotex, 477 U.S. at 324. It is not the court's role, however, to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

### B. Title VII, 42 U.S.C. § 2000e, *et seq.*

#### 1. Exhaustion of Administrative Remedies

Relying on National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), Intel moves to dismiss as time-barred any claims based on events occurring after May 1, 2003 on the ground that Herrera has not exhausted his administrative remedies with respect to any such claims. Intel notes that Herrera's EEOC Charge of Discrimination specifies—and Herrera has testified—that the alleged discrimination took place between August 1, 2002 and May 1, 2003 and that Herrera neither filed a new Charge nor amended his existing Charge to add claims arising from events occurring after May 1, 2003. [See Doc. 23 at 15, Exh. A at 215, Exh. Q]. Because of his failure to exhaust and because the "continuing violation" theory no longer applies to discrete acts, contends Intel, Herrera is barred from asserting claims based on (1) his May 16, 2003 placement on paid suspension, (2) his November 15, 2003 resignation from Intel, or (3) any other acts taking place later than May 1, 2003. [See

Doc. 23 at 16; see also Doc. 27 at 2-5].

Herrera disputes that he has failed to exhaust his administrative remedies and is thus barred from asserting claims based on events occurring after May 1, 2003. Herrera maintains that an act not included in an EEOC Charge of Discrimination may still be the subject of a lawsuit if that act is reasonably related to the allegations listed in the Charge. Accordingly, Herrera urges the Court to consider as adverse employment actions his May 16, 2003 placement on leave and contemporaneous issuance of a written warning, and what he describes as his constructive discharge in November 2003. [Doc. 24 at 12-13].

The filing of an administrative charge with the EEOC is a prerequisite to a civil suit under Title VII, and a claim will be deemed time-barred if it is not filed within 300 days of the alleged unlawful employment practice. See Mascheroni v. Bd. of Regents of University of California, 28 F.3d 1554, 1557 (10th Cir. 1994) (explaining that 300 days are allowed in "deferral states" such as New Mexico, where the EEOC defers to the enforcement efforts of a state agency empowered to undertake employment-discrimination investigations). In National R.R. Passenger Corp. v. Morgan, the United States Supreme Court eliminated the "continuing violation" theory as applied to discrete acts of discrimination and held that because each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice, a plaintiff raising claims of discrete discriminatory or retaliatory acts must file his or her administrative charge within the appropriate time period. Morgan, 536 U.S. at 114, 123. While this rule applied to bar the Morgan plaintiff from suing on claims for which no administrative remedy had been

6

sought when the underlying incidents occurred more than 300 days prior to the filing of his EEO complaint, see id. at 106, the Tenth Circuit has held that "[t]he rule is equally applicable . . . to discrete claims based on incidents occurring after the filing of Plaintiff's EEO complaint." Martinez v. Potter, 347 F.3d 1208, 1220-21 (10th Cir. 2003). In no uncertain terms, the Tenth Circuit went on to state that "Morgan abrogates the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers[.]" Id. at 1210. Additionally, "Morgan implicitly overturns prior Tenth Circuit law in that plaintiffs are now expressly precluded from establishing a continuing violation exception for alleged discrete acts of discrimination occurring [outside] the limitations period, even if sufficiently related to those acts occurring within the limitations period." Davidson v. America Online, Inc., 337 F.3d 1179, 1185 (10th Cir. 2003).

The rule set forth in Morgan applies to such discrete acts as termination, failure to promote, denial of transfer, or refusal to hire, which "are easy to identify." Morgan, 536 U.S. at 114. The rule does not, however, extend to claims of hostile-work-environment discrimination because

> [h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Such claims are based on the cumulative effect of individual acts.

Id. at 115 (citations and quotations omitted). With respect to claims of hostile work environment, courts may consider "acts taking place after the plaintiff files an EEOC charge

7

if those acts contribute to the same hostile work environment that existed during the filing period." Duncan v. Manager, Dep't of Safety, City and County of Denver, 397 F.3d 1300, 1310 (10th Cir. 2005) (*citing* Morgan, 536 U.S. at 117 *and* Martinez, 347 F.3d at 1211).

In the instant case, Herrera complains of the following three post-May 1, 2003 incidents that he claims amount to adverse employment actions: (1) being "walked out of the job" following his May 16, 2003 meeting with Dempsey, which, in Herrera's mind, constituted a termination; (2) being issued a third written warning[1] as a result of the May 16, 2003 meeting; and (3) being forced to resign (constructive discharge) in November 2003. [Doc. 23, Exh. A at 211; Doc. 24 at 14]. Morgan, however, dictates that incidents (1) and (3) be viewed as discrete acts, which, in turn, constitute separate actionable unlawful employment practices whose limitations periods began to run from the date on which each incident occurred. See Morgan, 536 U.S. at 114 (specifically identifying terminations as easily identified discrete acts). Because Herrera never filed an administrative charge with respect to incidents (1) and (3), they may not serve as actionable adverse employment actions here. While the Tenth Circuit has not addressed whether the issuance of a written warning

---

[1] Whether Herrera was actually issued a written warning on or about May 16, 2003 is not entirely clear. Unlike the first two written warnings, which were issued in December 2002 and March 2003, a written warning bearing a date of May 2003 has not been included as an exhibit or otherwise made a part of the record before the Court. [See Doc. 23, Exhs. K and M]. Additionally, Herrera does not dispute that, although Steve Dempsey anticipated issuing a warning in May 2003, before such a warning could be issued, Herrera notified Intel that he would take a medical leave of absence. [Doc. 23 at 9; Doc. 24 at 5]. In any event, because the Court concludes that Herrera has failed to exhaust his administrative remedies with respect to claims arising out of the discrete acts that occurred after May 1, 2003, the events of May 16, 2003 are not considered for purposes of defining any adverse employment actions to which Herrera may have been subjected.

constitutes a discrete act, the Eighth Circuit has deemed an employee reprimand a discrete act and, thus, a distinct unlawful employment practice. Mems v. City of St. Paul, Dep't of Fire and Safety Servs., 327 F.3d 771, 785 (8th Cir. 2003).

This Court similarly concludes that it is logical to view any written warning issued as a result of the May 16, 2003 meeting as a discrete act, rather than as part of a continuing violation, since Herrera acknowledges that he knew of the warning within one day of its issuance. [See Doc. 24 at 5, ¶ 44-45 (alleging that Herrera received his third written warning on May 17, 2003)]. In the Tenth Circuit, "a continuing violation claim fails 'if the plaintiff knew, or through the exercise of reasonable diligence would have known, []he was being discriminated against at the time the . . . event[] occurred.'" Davidson, 337 F.3d at 1184 (*quoting* Bullington v. United Air Lines Inc., 186 F.3d 1301, 1310, 1311 (10th Cir.1999)). Thus, regardless of whether the post-May 1, 2003 employment practices herein alleged to have been discriminatory are reasonably related to those specified in his EEOC Charge, Herrera is precluded from relying on those incidents as anything more than background evidence in support of timely claims. See Morgan, 536 U.S. at 113 and Martinez, 347 F.3d at 1211 (allowing non-actionable conduct to used as background evidence in support of timely claims).

### a. Hostile Work Environment

Title VII provides, in pertinent part, that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's

9

race . . . or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). To survive a motion for summary judgment, a plaintiff alleging the existence of a hostile work environment must show "'that under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus.'" Chavez v. New Mexico, 397 F.3d 826, 832 (10th Cir. 2005) (*quoting* Bolden v. PRC Inc., 43 F.3d 545, 551 (10th Cir.1994). The Tenth Circuit has repeatedly and consistently emphasized that a plaintiff cannot demonstrate pervasiveness or severity merely by offering "'a few isolated incidents of racial enmity' or 'sporadic racial slurs.'" Chavez, 397 F.3d at 832 (*quoting* Bolden, 43 F.3d at 551). Instead, the plaintiff is charged with showing "a steady barrage of opprobrious racial comment." Hicks v. Gates Rubber Co., 833 F.2d 1406, 1412-13 (10th Cir. 1987) (*quoting* Johnson v. Bunny Bread Co., 646 F.2d 1250, 1257 (8th Cir.1981)); see also Bolden, 43 F.3d at 551 (two overtly racial remarks and one arguably racial comment over the course of eight years not sufficiently pervasive to be actionable); Ford v. West, 222 F.3d 767, 777-778 (10th Cir. 2000); Witt v. Roadway Exp., 136 F.3d 1424, 1432 (10th Cir. 1998) (two race-based incidents in two years insufficient to establish a pervasively racially hostile work environment); Gross v. Burggraf Const. Co., 53 F.3d 1531, 1542-43 (10th Cir. 1995). Indeed, "Title VII is violated only where the work environment is so 'heavily polluted with discrimination as to destroy the emotional and psychological stability of the minority [employee].'" Hicks, 833 F.2d at 1413 (*quoting* Rogers v. EEOC, 454 F.2d 234, 238 (5th Cir.1971), *cert. denied*, 406 U.S. 957 (1972)).

In this case, Herrera has identified two comments made over his ten-year period of employment with Intel that he asserts were derogatory and motivated by racial animus. He first alleges that in December 2002, Dempsey called him a "Spic." [Doc. 24, Exh. A at 53-56]. He next alleges that while he was working in a back bay with other Hispanic employees, co-worker Lars Albrecht passed by and asked, "Why is it the white guys [are] up front and you Mexicans are back here in the back?" [Id., Exh. A at 167]. Taking in reverse order the elements that must be satisfied to sustain a claim of hostile-work-environment employment discrimination, this Court concludes that Herrera has not shown that there is a genuine issue of material fact as to whether the comments he complains of stemmed from racial animus.

First, Dempsey's use of the word "Spic" came in the *context* of a *supervisor* recounting to a subordinate a prior incident during which co-workers showed disrespect for one another and demonstrated poor communication skills. HR Program Manager Christine Bowlin investigated the incident and concluded that Dempsey never referred, or intended to refer, to Herrera as a "Spic," and that he apologized if his example offended Herrera. Bowlin concluded that Dempsey was not motivated by racial animus. [Doc. 23, Exh. C, Affidavit of Christine Bowlin]. In response, Herrera states only that a genuine issue of fact exists because "Plaintiff has testified that his supervisor used the word 'spic' in an offensive way, which clearly upset Plaintiff[,]" and "[i]n the manner that it was used, Plaintiff took it to mean that Mr. Dempsey was basically calling him a 'spic.'" [Doc. 24 at 15].

With respect to Albrecht's comment that Intel's Hispanic employees were relegated

11

to back areas while its white employees worked in front areas, Herrera's deposition testimony indicates that, rather than view that remark as a product of racial animus, Herrera interpreted it as support for his own position that Intel fostered and tolerated a racially discriminatory environment. Herrera testified that his reaction to Albrecht's question, "Why is it the white guys [are] up front and you Mexicans are back here in back?" was "[W]ow, somebody else is noticing." [Doc. 24, Exh. A at 167]. When asked whether he believed that Albrecht was making a racial slur, Herrera responded, "He was making a racial comment about the whites being in front and the Mexicans in back[,]" and "What would you call a slur? He did call us Mexicans." [Id., Exh. A at 167]. Even assuming that the complained-of remarks of Dempsey and Albrecht constitute racial harassment or harassment stemming from racial animus, they are best described as isolated or sporadic incidents of racial enmity and are not sufficient to show the steady barrage of opprobriousness required to sustain a claim of hostile-work-environment employment discrimination. See, e.g., Chavez, 397 F.3d at 832 (two racially offensive remarks "fall far short of the 'steady barrage required for a hostile environment claim'"); Bolden, 43 F.3d at 551 (two overtly racial remarks and one arguably racial comment made over eight years "are insufficient to be actionable").

    It bears repeating that, in order to defeat a motion for summary judgment, an adverse party must do more than rest upon unsupported conclusory allegations. See Harrison, 253 F.3d at 557. Because Herrera has failed to set forth specific facts showing that there is a genuine issue for trial, see Fed.R.Civ.P. 56(e), he has failed to meet his summary-judgment

12

burden with respect to his claim for hostile-work-environment employment discrimination.[2]

## b. Disparate Treatment

Herrera next alleges that he was discriminated against inasmuch as he was treated differently from similarly situated, non-Hispanic co-workers. Specifically, Herrera contends that, because he is Hispanic, he was issued written reprimands "under false pretenses," subjected to constant one-on-one meetings with Steve Dempsey while other employees were not, and transferred to an isolated work location after sustaining an on-the-job wrist injury. Herrera also submits that Mark Stierwalt was not reprimanded even though he produced "faulty products." [Doc. 24 at 17-18].

A plaintiff alleging that he was subjected to disparate treatment with respect to workplace discipline must establish that (1) he is a racial minority, (2) he was disciplined by his employer, and (3) the employer imposed the discipline under circumstances giving rise to an inference of racial discrimination. Jones v. Denver Post Corp., 203 F.3d 748, 753 (10th Cir. 2000). If the plaintiff makes this prima facie showing, the burden then shifts to the defendant/employer to articulate some legitimate, nondiscriminatory reason for the

---

[2] According to Herrera, his hostile-work-environment claims "go well beyond" the statements made by Dempsey and Albrecht. [Doc. 24 at 16]. Herrera maintains that he was (1) deprived of his training duties and denied new manufacturing positions, (2) subjected to weekly meetings over minor matters, (3) written up for taking vacation time, (4) confronted by co-workers at a meeting during which he was not allowed to defend himself, (5) asked to quit and threatened with termination, and (6) transferred to a building where he was required to work alone. [Id.]. Claims based on these actions are similarly doomed by Herrera's failure to present specific facts—as opposed to his own conclusory allegations—showing that these actions were racially motivated or stemmed from racial animus, and thus create a genuine issue for trial. See Harrison, 253 F.3d at 557; Fed.R.Civ.P. 56(e).

challenged actions. Id. (*quoting* McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). If the defendant/employer satisfies its burden, the plaintiff must then come forward with evidence showing that the defendant's reasons are a pretext for racial discrimination. One way the plaintiff may do this is to demonstrate that "'he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness.'" Salguero v. City Of Clovis, 366 F.3d 1168, 1176 (10th Cir. 2004) (*quoting* Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir.2000)).

For purposes of *Intel's Motion for Summary Judgment*, the Court assumes without deciding that Herrera has made a prima facie case of disparate treatment. Nevertheless, the Court concludes that Intel has articulated legitimate, nondiscriminatory reasons for its actions and, further, that Herrera has failed to demonstrate that Intel's articulated reasons are pretextual.

Herrera's assertion that his December 2002 reprimand was "given under false pretenses" is belied by documentary evidence showing that this written warning was issued because of, among other things, Herrera's (1) absenteeism, (2) unsatisfactory performance, (3) lack of dependability, (4) failure to obey a supervisor's direction, and (5) unwillingness to accept feedback from supervisors and peers. [Doc. 23, Exh. K]. Intel's written policy on progressive discipline states that a written warning may be issued in an attempt to notify an employee of, *inter alia*, "failure to meet attendance or performance standards (including quantity, quality, and behavior)." [See Doc. 23, Exh. B ("Notice of a performance problem may be delivered through a variety of methods [including] Corrective Action Plan/Written

14

Warning[.]")]. Indeed, the December 2002 written warning states, in part, that

> [y]ou have demonstrated unsatisfactory teaming and productivity performance. You have failed to comply with direction given you by your supervisor in one-on-ones and follow up documentation. Your behavior has significantly violated the trust [of] your coworkers. Your coworkers have stated to me that they cannot depend on you to perform your fair share of the team's work.

[See Doc. 23, Exh. K]. The written warning then cites five specific examples of Herrera's substandard performance before stating that "[t]he extent to which you have violated the trust of your team members is manifested in your team's unwillingness to support you any further at this time." [Id.].

The Court also concludes that, even assuming the truth of Herrera's allegation that he was subjected to more one-on-one meetings with Dempsey than other non-Hispanic employees, Herrera has failed to demonstrate that any additional meetings were called because Herrera is Hispanic. When asked how he knew he had more one-on-one meetings than anybody else, Herrera responded, "Because I was off the floor a lot." [Doc. 24, Exh. A at 128-129]. Again, even assuming that Dempsey held more one-on-ones with Herrera than he held with Herrera's non-Hispanic co-workers, Intel's written policy on progressive discipline provides that such meetings are one method by which notice of an employee's performance problem may be delivered. [See Doc. 23, Exh. B ("Notice of a performance problem may be delivered through a variety of methods [including] 1:1s with managers[.]")]. Herrera's evidence with respect to Dempsey's failure to reprimand Mark Stierwalt for allegedly producing faulty products, [see Doc. 24 at 18], is similarly lacking. Indeed, when

asked if he had any evidence that Stierwalt was not disciplined for his actions, Herrera responded, "No, I don't." [Id., Exh. A at 252].

Finally, the evidence fails to support Herrera's assertion that he was transferred to an isolated work location because he is Hispanic. To the contrary, the evidence reveals that Herrera sustained a wrist injury, which prevented him from working as a manufacturing technician and necessitated a temporary transfer (accommodation) to the technical writing department under Intel's "Return to Work" program. [See Doc. 23, Exh. A at 188-190]. The evidence also reveals that when Herrera complained of feeling unsafe in the building in which he would ordinarily be required to perform his accommodation position, Building RR8, he was allowed to move elsewhere. [Id., Exh. N, "May 15, 2004 email from Steve Dempsey to Tony Herrera" ("If you felt unsafe working in RR8 on Saturdays [temporary supervisor] Lee [Orosco] gave you permission to work elsewhere.")].

In short, with respect to the allegations of disparate treatment, the Court concludes that Herrera has not satisfied his burden of establishing "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Intel's] proffered legitimate reasons for its action[s] that a reasonable factfinder could rationally find them unworthy of credence . . . .'" Plotke v. White, 405 F.3d 1092, 1102 (10th Cir. 2005) (*quoting* Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir.1997)). For that reason, summary judgment will entered in favor of Intel on Herrera's disparate-treatment claims.

### c. Retaliation

Herrera lastly asserts a claim for retaliation. "Title VII prohibits an employer from

16

discriminating against an employee in retaliation for opposing unlawful employment practices." Penry v. Federal Home Loan Bank of Topeka, 155 F.3d 1257, 1263 (10th Cir. 1998) (*citing* 42 U.S.C. § 2000e-3(a)).  A plaintiff establishes a prima facie case of retaliation by demonstrating that (1) he engaged or participated in protected activity, (2) he suffered an adverse employment action contemporaneous with or subsequent to such participation, and (3) there is a causal connection between the protected activity and the adverse employment action.  Chavez, 397 F.3d at 838.  If the plaintiff so demonstrates, the burden then shifts to the employer to produce a legitimate, nondiscriminatory justification for taking the disputed employment action. If the employer provides such a justification, the burden shifts back to the employee to provide evidence showing that the employer's proffered reason is a pretext for discrimination. Stover v. Martinez, 382 F.3d 1064, 1070-71 (10th Cir. 2004). While the Tenth Circuit liberally defines "adverse employment action," alleged "[r]etaliatory conduct other than discharge or refusal to rehire is . . . proscribed by Title VII only if it alters the employee's 'compensation, terms, conditions, or privileges of employment,' or 'adversely affect[s] his [or her] status as an employee.'" Chavez, 397 F.3d at 838 (*quoting* Sanchez v. Denver Pub. Sch., 164 F.3d 527, 533 (10th Cir.1998)).  By contrast, "[m]ere inconveniences or alterations of job responsibilities do not rise to the level of an adverse employment action." Stover, 382 F.3d at 1071.

     In this case, Herrera seems to allege—and Intel does not dispute—that Herrera engaged in protected activity when he contacted HR Program Manager Bowlin to complain of Dempsey's use of the term "Spic" in December 2002.  [See Doc. 23 at 24; Doc. 24 at 19-

17

20]. Herrera argues that he was then subjected to the following adverse employment actions: the issuance of written warnings in March and May 2003 and being treated differently from his co-workers. [Doc. 24 at 20]. As with Herrera's disparate-treatment claims, the Court assumes without deciding that Herrera has demonstrated a prima facie case of retaliation. Even with the benefit of that assumption, however, the Court is constrained to conclude that Intel has proffered a legitimate, nondiscriminatory reason for its actions, which Herrera has not shown to be pretextual.

For the reasons explained in Section B.1. *supra*, any written warning that may have been issued in May 2003 is not considered an actionable adverse employment action under the circumstances. See Morgan, 536 U.S. at 114, 123; Martinez, 347 F.3d at 1220-21. Additionally, because this Court has determined that Herrera fails to raise a genuine issue of material fact with respect to his claims of disparate treatment, the allegation that he was treated differently from his co-workers is not considered for purposes of his retaliation claim. The Court thus is left with deciding whether the issuance of the March 2003 written warning can support Herrera's claim of retaliation. The Court determines that it cannot.

For the review period January 1, 2002 through December 31, 2002, Herrera received a rating of "Improvement Required," which he acknowledged represents the lowest rating he could have received. [Doc. 23, Exh. A at 171; Exh. L]. Though Herrera's written performance review for that period includes some positive comments, it also includes the following remarks: "Your behavior highlights significant issues with your ability to follow verbal and written expectations of your supervisor[]"; "Lacks motivation or desire to

18

participate[]"; "Has had multiple conflicts with team members[]"; "Tony hasn't been able to support any request I have made[]"; and "Tony hasn't demonstrated superior performance or process knowledge." [Id.]. In support of its argument that the written warning issued in March 2003 was the result of Herrera's January 1, 2002 to December 31, 2002 performance review, Intel points to its written policy on progressive discipline, which states that a written warning may be issued in an attempt to notify an employee of "failure to meet attendance or performance standards (including quantity, quality, and behavior)." [See Doc. 23, Exh. B ("Notice of a performance problem may be delivered through a variety of methods [including] Corrective Action Plan/Written Warning[.]")].

Following Intel's proffer of this legitimate, nondiscriminatory reason for issuing the written warning, it becomes Herrera's burden to "demonstrate pretext by showing the . . . proffered reason was so inconsistent, implausible, incoherent, or contradictory that it is unworthy of belief." Stover, 382 F.3d at 1072. The Court concludes that Herrera has not done so. Instead, Herrera states only that he "has brought forth his evidence that supports his claims that [Intel's] alleged reasons for writing him up were pretext." [Doc. 24 at 20]. Again, in order to defeat a motion for summary judgment, an adverse party must do more than rest upon unsupported conclusory allegations. See Harrison, 253 F.3d at 557. Because Herrera has failed to set forth specific facts showing that there is a genuine issue for trial, see Fed.R.Civ.P. 56(e), he has failed to meet his summary-judgment burden with respect to his claim for retaliation. Summary judgment will therefore be entered in favor of Intel on Herrera's retaliation claim.

### III. CONCLUSION

For the foregoing reasons, summary judgment will be entered for Intel on all claims and this action will be dismissed with prejudice.

**IT IS, THEREFORE, ORDERED** that *Intel's Motion for Summary Judgment* [Doc. 22] is GRANTED in its entirety and this action is dismissed with prejudice.

**SO ORDERED** this 25th day of August, 2005, in Albuquerque, New Mexico.

                                                        **M. CHRISTINA ARMIJO**
                                                        United States District Judge